**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Plaintiff,

v. Case No. 19-10669

MICHAEL ANGELO,
*et al.*,

Defendants.
_________________________________/

**OPINION AND ORDER DENYING DEFENDANT MICHAEL ANGELO'S MOTION FOR RECONSIDERATION AND TERMINATING AS MOOT MOTION FOR STAY**

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") brought this action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d), and also asserted state law claims of fraud and unjust enrichment. (ECF No. 1, PageID.55-63.) State Farm alleged that Defendant Michael Angelo and others submitted fraudulent bills for medically unnecessary services and prescriptions rendered to patients involved in automobile accidents. (*Id.*, PageID.2, 4, 54.)

After extensive litigation, the parties entered into a settlement agreement, requiring, among other provisions, Angelo to dismiss or release particular categories of claims against State Farm. (ECF No. 118, PageID.6676; ECF No. 126, PageID.7132.) The court retained jurisdiction to enforce the terms of their agreement. (ECF No. 114, PageID.6176.) State Farm subsequently filed a motion to enforce the parties' settlement agreement. (ECF No. 118.) State Farm argued that Angelo was in breach of their

agreement by virtue of his role as a relator in a *qui tam* action against State Farm brought under the False Claims Act ("FCA"). State Farm argued that Angelo must "immediately cease and desist from taking any further action to prosecute the *Quit Tam* Lawsuit" and "take all necessary steps to secure dismissal of the *Qui Tam* Complaint." (ECF No. 118, PageID.6668.) The court found that the *Qui Tam* Action fell within the scope of the settlement agreement and held that the agreement required Angelo to "'take all necessary steps . . . to secure the discontinuance of' the *Qui Tam* Action" as against State Farm. (ECF No. 149, PageID.8080-81.) The opinion's ultimate, narrow holding was that Angelo must "solicit the government's consent to dismiss" State Farm from the *Qui Tam* Action. (*Id.*, PageID.8081.) The court made clear that if "the government decides it does not consent to dismissal, then that is the end of the matter," as the court would not have authority to mandate anything further. (*Id.*, PageID.8079.) Now before the court is Angelo's "Motion for Reconsideration, or in the Alternative, Motion to Amend the Order."[1] (ECF No. 150.) The motion has been fully briefed (ECF Nos. 150, 153, 154), and a hearing is unnecessary. E.D. Mich. LR 7.1(f)(1)-(2).

Under Eastern District of Michigan Local Rule 7.1(h)(2), a party may move for reconsideration of a non-final order, although they are "disfavored" and may be brought only upon specific grounds. Angelo advances his motion under Rule 7.1(h)(2)(A), which requires a three-part showing that: "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record

---

1 Angelo also filed a motion to stay the court's previous order pending the resolution of the motion for reconsideration. (ECF No. 151.) Because the court will address the motion for reconsideration first, the court will deny that motion as moot.

and law before the court at the time of its prior decision." *See Burn Hookah Bar, Inc. v. City of Southfield*, No. 2:19-CV-11413, 2022 WL 730634, at *1 (E.D. Mich. Mar. 10, 2022) (Murphy, J.). Motions for reconsideration "should not be used liberally to get a second bite at the apple." *United States v. Lamar*, No. 19-CR-20515, 2022 WL 327711, at *1 (E.D. Mich. Feb. 3, 2022) (Goldsmith, J.) (quoting *Oswald v. BAE Indus., Inc.*, No. 10-12660, 2010 WL 5464271, at *1 (E.D. Mich. Dec. 30, 2010)). They are "not an opportunity to re-argue a case" or "'raise [new] arguments which could, and should, have been made' earlier." *See Burn Hookah Bar,* 2022 WL 730634, at *1 (alteration in original) (quoting *Bills v. Klee*, No. 15-cv-11414, 2022 WL 447060, at *1 (E.D. Mich. Feb. 14, 2022)); *cf. Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citing *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir.1992)) (explaining that a Rule 59(e) motion to alter or amend a judgment is "not an opportunity to re-argue a case" and is aimed at reconsideration, not initial consideration).

Angelo makes five arguments: (1) the court misinterpreted the settlement agreement, (2) the court's prescribed action is not within the scope of the agreement to "take all steps necessary," (3) the court's interpretation runs contrary to public policy and renders the settlement agreement unenforceable, (4) the order is unconstitutional under the compelled speech doctrine, and (5) the proper venue to adjudicate the *Qui Tam* Action is before the *Qui Tam* Action's judge.

First, the court already determined that the *Qui Tam* Action falls within the scope of the settlement agreement—thus, although Angelo contends the court made a "mistake," his arguments largely reflect a mere disagreement with the court's

interpretation of the settlement agreement.[2] (*See* ECF No. 149, PageID.8069-72.) Indeed, Angelo advances the same arguments that he did before, particularly as it pertains to the court's interpretation of the phrase "arising from" as written in the settlement agreement. (*See, e.g.*, ECF No. 146, PageID.8019, 8032, 8035.) The court considered these arguments and disagreed. While Angelo may have had additional sources of knowledge for the claims advanced in the *Qui Tam* Action, the court has already discussed why the original and amended complaint "arise from" the particular services specified in the settlement agreement; although Angelo for a second time attempts to refute it, reading the complaints as a whole demonstrates a causal connection between the *Qui Tam* Action and services rendered by Angelo to State Farm insureds. (ECF No. 149, PageID.8071-72.) As the court previously explained, the amended complaint establishes that the claims "arise from the provision of medical services to individuals insured by [State Farm]," further showing that Angelo had "direct knowledge of Medicare and/or Medicaid beneficiaries that are also insureds of [State Farm] or claimants [who] are entitled to coverage under Michigan law, who sought treatment at his or other facilities, but for whom the [State Farm] refused to pay claims." (*Id.*, PageID.8071-72.) Now, to rebut this, Angelo relies heavily on his argument that an exemplar patient, R.S., was actually a "claimant" and not an "insured," thus falling

2 Angelo also recasts his arguments that the claims in the *Qui Tam* Action were not contemplated by the parties and otherwise belong to the government, with Angelo serving as a mere agent in his capacity as a relator. (ECF No. 150, PageID.8098-103.) The court has already addressed and rejected these contentions. (ECF No. 149, PageID.8072-75.)

outside of the settlement agreement's terms.[3] But even if this were true, R.S. was only one example of a patient that would trigger the settlement agreement's Dismissal and Release provisions. Thus, "correcting the mistake" would not "change[] the outcome of the prior decision." E.D. Mich. L.R. 7.1(h)(2)(A).

In any event, as noted in the court's order enforcing the settlement agreement, Angelo has advanced positions that apparently contradict. The court found that the *Qui Tam* Action's original complaint clearly fell within the scope of the settlement agreement, particularly where both this case and the *Qui Tam* Action's original complaint "require a court to assess the propriety of treatment that [Angelo] or his facilities rendered to insured patients and whether the bills are legitimate." (ECF No. 149, PageID.8070.) To avoid dismissal, Angelo argued in his supplemental briefing that

---

[3] To be sure, the amended complaint alleges that R.S. was entitled to no-fault coverage under a driver's State Farm no-fault policy because the *vehicle that struck him* was "insured" by State Farm—R.S. himself was not insured by State Farm. (ECF No. 145-1, PageID.7885.) However, State Farm points out that a State Farm "insured" in this context includes individuals like R.S. under the policies relevant to this action. As summarized by State Farm, the "SFMAIC 6126NE Amendatory Endorsement, which is part of the policy terms that were at issue in this action, explicitly provides that '*Insured* for Personal Injury Protection Coverage means: . . . any other *person* who sustained *bodily injury* and is entitled to Personal Injury Protective Coverage benefits under this policy pursuant to the Michigan Insurance Code.'" (ECF No. 153, PageID.8220-21.) *Cf. Mary Free Bed Rehab. Hosp. v. Farmers Ins. Grp. of Cos.*, No. 321328, 2015 WL 9317979, at *5 (Mich. Ct. App. Dec. 22, 2015) (noting that an insurance policy expanded the definition of an "insured" person to include the claimant who was injured as an occupant of the vehicle). Additionally, in the *Qui Tam* Action's amended complaint, Angelo specifically points to R.S. as evidence of State Farm's alleged failure to report "insureds" or delaying or denying coverage to "insureds." (ECF No. 145-1, PageID.7886-87 ("Mr. Angelo's exemplar further illustrates that [the *Qui Tam* Action defendants] fail to report their insureds under Section 111 reporting and fail to make payments for medical expenses incurred (by delaying or denying coverage to the insureds), thus forcing Government Healthcare Programs to make the payments without being reimbursed.").)

there was no relationship between the original complaint and the amended complaint and thus the new, operative complaint was not subject to the settlement agreement. But, at the same time, relying on Federal Rule of Civil Procedure 15(c)(1)(B), Angelo argued that the amended complaint was the only relevant complaint and "relates back" to the original. (ECF No. 146, PageID.8035-36.) This rule states that an amendment relates back to the original when "the amendment asserts a claim or defense that *arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading*." Fed. R. Civ. P. 15(c)(1)(B) (emphasis added). Thus, Angelo apparently conceded that at least some of the factual allegations within the amended complaint "arise out of" the facts alleged in the original complaint.[4] (ECF No. 149, PageID.8071 n.3.)

Second, Angelo essentially argues the court's determination requiring him to "at least request the government's consent to dismiss the claims against [State Farm]" constituted an improper interpretation of the settlement agreement. Angelo's arguments essentially rehash prior arguments and express disagreement with the court's interpretation, as opposed to contending that the court made a "mistake" based on the record and law before it. (ECF No. 150, PageID.8103-05.) While Angelo maintains that requesting the government's consent to dismiss the *Qui Tam* Action would not be "necessary" as defined under the settlement agreement, the court disagrees, as already explained in its previous order. (ECF No. 149, PageID.8077-78.)

---

4 The court need not address whether the very act of amending the original complaint—instead of immediately taking reasonable steps to dismiss it—would constitute a breach under the settlement agreement due to its applicability to "pending" lawsuits. (ECF No 118-2, PageID.6704-05.) The court did not definitively resolve this question in its previous order.

Next, Angelo makes new public policy and constitutional arguments, all of which could have and should have been made earlier. Indeed, the court considered the public policy implications at stake and found that its holding would "not conflict with the underlying public policies of the FCA." (ECF No. 149, PageID.8079-80.) Now, Angelo claims, *inter alia*, that enforcement of the settlement agreement is tantamount to concealing a crime or stifling a prosecution, which renders the agreement void; Angelo even suggests that following the court's order would subject him to criminal liability under Mich. Comp. Laws § 750.149. (ECF No. 150, PageID.8106-08.) Even if the court considered these supplemental arguments, nothing in the court's order restricted Angelo's ability to offer "cooperation, evidence, or assistance" in a criminal prosecution as he contends. (*Id.*, PageID.8108.) Rather, the court's order required Angelo to request the government's consent to dismiss the *Qui Tam* Action against State Farm, which is a *civil action* brought by Angelo as the relator. *See, e.g.*, *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 404 (2011) (noting that the FCA "authorizes *qui tam* suits," brought by private plaintiffs and in which private parties "bring civil actions" in the government's name); *Sanders v. Allison Engine Co.*, 703 F.3d 930, 942-43, 948 (6th Cir. 2012) (discussing how the FCA is a civil remedy found under a civil statutory scheme, and ultimately provides for civil penalties, not criminal sanctions). In no way would Angelo be disrupting a criminal prosecution under 18 U.S.C. § 287—or any other criminal statute—which is separate from a civil *qui tam* proceeding, and this conclusion is amplified by the fact that Angelo was already required to serve the government with a "copy of the complaint and written disclosure of substantially all material evidence and information the person possesses" upon initiating the action. *See* 31 U.S.C § 3730(b)(1)

("A person may bring a *civil action for a violation of section 3729* for the person and for the United States Government." (emphasis added)); *see also id.* § 3730(b)(2).

Angelo also contends—for the first time—that following the court's order would violate the First Amendment because it is "unambiguously an order to speak in a way that Angelo disapproves and is therefore unconstitutional." (ECF No. 150, PageID.8112.) He maintains that he should not be required to "express a position to the Department of Justice to which he opposes." (ECF No. 155, PageID.8265.) But again, he cannot use his motion as an opportunity to advance new arguments in support of his position, especially where they could have been raised beforehand. *Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374 ("A motion under Rule 59(e) is not an opportunity to re-argue a case."); *Burn Hookah Bar*, 2022 WL 730634, at *1. Nor can Angelo legitimately claim that the court's order came as a surprise, which would prevent him from making a First Amendment argument earlier. In this regard, Angelo maintains that State Farm was *always* seeking an order requiring Angelo, on his own, to dismiss State Farm from the *Qui Tam* Action, rather than one requiring him to request the government's consent to dismiss the case. (ECF No. 155, PageID.8260-61.) However, State Farm made clear in the briefing of its motion that that, under the FCA, it could "not seek a voluntary dismissal of any action . . . without the Attorney General's consent," effectively conceding that the only way the agreement could be enforced is by Angelo requesting the government's consent to dismiss the case. (ECF No. 118, PageID.6695 (citing *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 336 (6th Cir. 2000)).) Moreover, in its briefing, State Farm (1) argued that the parties' settlement agreement was breached by failing "to seek the government's consent to file a voluntary dismissal,"

(2) explained how both the United States and State of Michigan contemplated this possibility, and (3) specifically asserted that it was "unaware of any evidence that Angelo has solicited the written consent of the government, filed a proposed notice of voluntary dismissal in the *Qui Tam* Lawsuit requesting that the Court solicit the government's consent, or taken any other steps necessary to secure any consent or provide any notice." (*Id.*, PageID.6695-96.) Additionally, State Farm reiterated this position in its reply brief, explaining how it "does not need to show that the government's claims can be dismissed here without the government's consent," and it further noted that "Angelo does not know whether the government would agree to dismissal of the *Qui Tam* Lawsuit because he, in breach of the Settlement Agreement, has not asked." (ECF No. 130, PageID.7333-34.) Because Angelo had ample notice and opportunity to refute State Farm's arguments, including through the use of his supplemental brief, Angelo's First Amendment arguments are not timely.[5]

---

[5] Insofar as Angelo argues that such the First Amendment mandates relief under Rule 60(b)(5), the court disagrees. Angelo *voluntarily* undertook a duty to "take all steps necessary" to dismiss any pending actions against State Farm. (ECF No 118-2, PageID.6704-05.) *Cf. Ostergren v. Frick*, 856 F. App'x 562, 569 (6th Cir. 2021) (rejecting a First Amendment challenge to a non-disclosure agreement in a contract because the parties voluntarily undertake a duty not to speak). The fact that he is now ordered to communicate this duty to the government in the *Qui Tam* Action only incidentally burdens any "speech." *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) ("It is also true that the First Amendment does not prevent . . . imposing incidental burdens on speech."); *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) (explaining that the freedom of speech is not implicated where conduct at issue is "in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."); *accord Country Mill Farms, LLC v. City of E. Lansing*, 280 F. Supp. 3d 1029, 1043-44 (W.D. Mich. 2017). Angelo premises his First Amendment challenge on "being forced to express a message that he disagrees with"—that is, soliciting the government's consent to dismiss the claims against State Farm despite "knowing . . . that State Farm has engaged in massive nationwide fraud." (ECF No. 155, PageID.8260.) But nothing about the court's order compels Angelo to communicate a belief that State Farm is *innocent* of such conduct or that he *endorses*

Finally, Angelo—again, for the first time—argues that this is not the proper court to consider the dismissal of the *Qui Tam* Action against State Farm; he asks, invoking the "first-to-file rule," that the court "defer determination of the dismissal of the Government's claims against State Farm" to the court presiding over the *Qui Tam* Action. (ECF No. 150, PageID.8113.) Even assuming this issue was raised in a timely manner, the court does not find it to be applicable. The first-to-file rule provides that "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should *generally* proceed to judgment.'" *Baatz v. Columbia Gas Transmission*, LLC, 814 F.3d 785, 789 (6th Cir. 2016) (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007)). Three factors are generally relevant: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Id.* If the factors support application of the rule, the court must also determine whether any "equitable considerations, such as evidence of 'inequitable conduct, bad faith, anticipatory suits, [or] forum shopping,' merit not applying the first-to-file rule in a particular case." *Id.* (quoting *Certified Restoration*, 511 F.3d at 551-52).

Here, the very first factor is lacking, as the "dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed." *See id.* at 790 (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 n.3 (9th Cir. 1982)). Both State Farm's complaint and motion to enforce the settlement agreement in this

---

such conduct—it requires only that he follow through with a *duty* that he voluntarily assumed.

case were filed before the *Qui Tam* Action and before any motion to dismiss was filed therein, and this court retained jurisdiction specifically to enforce the terms of the parties' settlement agreement. (ECF No. 114, PageID.6174.) Furthermore, even if all of the factors supported Angelo's position, it appears that equitable considerations would demand rejecting the first-to-file doctrine. Indeed, Angelo knew that this court retained jurisdiction to enforce the settlement agreement, and he raised this issue only after unsuccessfully litigating the motion to enforce it, demonstrating a bad faith attempt to potentially achieve a more favorable result from a different judge.

In summary, the issues raised in Angelo's motion for reconsideration do not warrant relief. To the extent Angelo argues, in the alternative, to "alter or amend" the order under Rule 59(e) or Rule 60(b), the court will also deny his motion. Angelo presents nothing new to the court that suggests there has been a "clear error of law" or the potential for "manifest injustice." The court weighed the public policy considerations at stake when it issued its order on State Farm's motion to enforce the settlement agreement. For the same reasons, relief under Rule 60(b) is unwarranted. There has been no mistake, inadvertence, surprise, or excusable neglect, nor would it be inequitable to enforce; the court's previous order already explained why the order conforms to the plain language of the FCA and the underlying policies at stake. Accordingly,

IT IS ORDERED that Angelo's "Motion for Reconsideration, or in the Alternative, Motion to Amend the Order" (ECF No. 150) is DENIED.

IT IS FURTHER ORDERED that Angelo's "Motion to Stay" (ECF No. 151) is TERMINATED AS MOOT.

Finally, IT IS ORDERED that Angelo, proceeding in good faith and undertaking no contrary or inconsistent acts, must forthwith solicit the government's consent to dismiss the instant *Qui Tam* Action against State Farm, along with its subsidiaries, affiliates, officers, directors, and employees, and must act on this obligation not later than **Monday, May 16, 2022.**

s/Robert H. Cleland /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: May 2, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 2, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-10669.ANGELO.MotionForReconsideration.MAZ.2.docx