# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 19-cv-10669 |
| Michael Angelo, *et al*. | ) ) | Hon. Nancy G. Edmunds |
| Defendants. | ) | |

---

### PLAINTIFF STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S AMENDED BILL OF COSTS PURSUANT TO COURT'S OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS (ECF NO. 197) AND COURT'S ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE ATTORNEY RATE INFORMATION UNDER SEAL (ECF NO. 206)

Plaintiff State Farm Mutual Automobile Insurance Company ("Plaintiff" or "SFMAIC"), through its attorneys, Miller, Canfield, Paddock and Stone, P.L.C., submits this Amended Bill of Costs pursuant to the Court's September 14, 2023 Opinion and Order Granting Plaintiff's Motion for Attorney Fees and Costs ("Order," ECF No. 197) and the Court's January 8, 2024 Order denying SFMAIC'S Motion for Leave to File Attorney Rate Information Under Seal (ECF No. 206, "Moton to Seal Order.")[1]   The Order directs Plaintiff to file a bill of costs for the Court's review, accounting for "reasonable attorney fees and related costs incurred in connection with the drafting, filing, and or arguing" of the following:

(A) Plaintiff's Motion to Enforce Settlement Agreement and Release Against Michael Angelo (ECF No. 118);

(B) Plaintiff's Reply Brief in Support of Its Motion to Enforce Settlement Agreement and Release Against Michael Angelo (ECF No. 130);

(C) Plaintiff's Motion for Leave to File Supplemental Brief in Support of Motion to Enforce Settlement Agreement and Release Against Michael Angelo (ECF No. 143);

---

[1] Pursuant to the Court's Motion to Seal Order, SFMAIC is filing this Amended Bill of Costs and accompanying documentation with its attorney rate information (which was the subject of SFMAIC's Motion for Leave to File Under Seal (ECF No. 199)) unredacted. The exhibits to this Bill of Costs contain the same redactions as SFMAIC's original Bill of Costs (ECF No. 198) in time entry descriptions for privileged, work product, or confidential material and/or for time entries for which SFMAIC is not asserting a claim for fees (see ECF No. 198, PageID.9156 n.1; ECF No. 198-3, PageID.9204, n.1; ECF No. 198-4, PageID.9246, n.1), as SFMAIC does not understand the Court's Motion to Seal Order to have been addressing or ruling on SFMAIC's assertions of privilege or the redactions in its billing entry descriptions.

(D)  Plaintiff's Supplemental Brief in Support of Motion to Enforce Settlement Agreement and Release Against Michael Angelo (ECF No. 145);

(E)  Plaintiff's Reply Brief in Support of Motion for Leave to File Supplemental Brief in Support of Motion to Enforce Settlement Agreement and Release Against Michael Angelo (ECF No. 148);

(F)  Plaintiff's Response to Defendant Michael Angelo's Motion for Reconsideration, or in the Alternative, Motion to Amend the Order (ECF No. 153);

(G)  Plaintiff's Response to Defendant Michael Angelo's Motion to Stay February 20, 2022 Order Pending Ruling on Defendant's Motion for Reconsideration (ECF No. 154);

(H)  Plaintiff's Motion to Enforce May 2, 2022 Order (ECF No. 163);

(I)  Plaintiff's Reply Brief in Support of Motion to Enforce May 2, 2022 Order (ECF No. 166);

(J)  Plaintiff's Response in Opposition to Defendant Michael Angelo's Motion to Strike or Disregard New Declaration (ECF No. 168);

(K)  Plaintiff's Motion for Leave to File Supplemental Brief in Support of Motion to Enforce May 2, 2022 Order or, in the Alternative, to Strike the Declaration of Shereef Akeel, Esq. (ECF No. 172);

(L)  March 20, 2023 Hearing on Motion to Enforce and Motion to Strike;

(M)  Plaintiff's Supplemental Brief in Support of Motion to Enforce May 2, 2022 Order (ECF No. 175);

(N)  Plaintiff's Response to Defendant Michael Angelo's Motion for Reconsideration, or in the Alternative, Motion to Amend the Order (ECF No. 180); and

(O)  Plaintiff-Appellee State Farm Mutual Automobile Insurance Company's Response to Emergency Motion for Stay of the District Court's March 30, 2023 and April 14, 2023 Orders Pending Appeal (Dkt. 9, Case: 23-1340 (6th Cir. Apr. 17, 2023)).

The Court's Order further granted SFMAIC's request for attorney fees and costs incurred, and requested SFMAIC to submit a bill of costs for:

(P) All of SFMAIC's costs and fees incurred to date in enforcing the Settlement Agreement in Angelo's two pending appeals before the United States Court of Appeals for the Sixth Circuit, namely *State Farm Mutual Automobile Insurance Company v. Michael Angelo, et al.*, CA6 Case Nos. 22-1409 and 23-1340; and

(Q) All of SFMAIC's costs and fees incurred to date in seeking the dismissal of *United States ex rel. Michael Angelo et al. v. State Farm Mutual Automobile Insurance Company*, No. 2:19-cv-12165 (E.D. Mich.) (the "Qui Tam Action").

(Order, ECF No. 197, PageID.9113-9114 n. 4; PageID.9122.).) As detailed below, the fees State Farm has incurred are substantial because State Farm had to engage in a multi-year effort to force Angelo's compliance with the Settlement Agreement. Over that same time, State Farm has been forced to incur significant fees in defending the Qui Tam Action, a very complex litigation. Indeed, Angelo has asserted to this Court that the Qui Tam Action represented potential "recovery of billions of dollars from State Farm and its affiliates." ECF No. 160, PageID.8315.

## I.   Background - SFMAIC's Years-Long Effort to Secure Angelo's Compliance with the Settlement Agreement.

Defendant Michael Angelo ("Angelo") executed a Settlement Agreement with SFMAIC (ECF No. 118-2, 175-4, the "Settlement Agreement") well over two years ago, on February 19, 2021. This Court repeatedly has found that Angelo's Settlement Agreement obligations apply to the False Claims Act *qui tam* action

Angelo filed against SFMAIC (E.D. Mich. Case No. 2:19-cv-12165, the "Qui Tam Action") and thus that Angelo, following execution of the Settlement Agreement, promptly should have taken the necessary steps to secure the dismissal of the Qui Tam Action. (*See* Orders, ECF Nos. 149, 157, 176, 181, 194). After signing the Settlement Agreement, however, Angelo attempted at every turn to dodge his obligation, resulting in SFMAIC expending significant time and resources defending itself in the Qui Tam Action and enforcing Angelo's obligations under the Settlement Agreement.

As a result of Angelo's noncompliance, SFMAIC notified Angelo of the noncompliance and filed a motion to enforce the Settlement Agreement to compel Angelo to take necessary steps to secure discontinuance of the Qui Tam Action (ECF No. 118). Rather than discharging his Settlement Agreement obligations in response to the notice or the motion, Angelo compounded his non-compliance by amending his original complaint in the Qui Tam Action to add nine new SFMAIC affiliates as named defendants, adding a co-relator (MSP WB LLC, to which Angelo had assigned his rights to recovery), adding *qui tam* claims on behalf of ten new states and Puerto Rico (the "States"), and adding more than 300 new insurance company defendants.

Even after the Court granted that motion and ordered Angelo to seek the Government's consent to dismiss SFMAIC (and its affiliates) from the Qui Tam

Action (ECF No. 149), Angelo continued to stall, filing a motion for reconsideration (ECF No. 150) and a motion to stay (ECF No. 151), then seeking an appeal but taking no action to prosecute that appeal for more than a year.[2]  In the meantime, Angelo filed what this Court recognized as a "facially deficient" declaration of compliance and "mischaracterized" or otherwise provided "misleading[]" information to the Government in purporting to solicit consent to dismiss, "contrary to the court's orders" that he proceed in good faith.  (ECF No. 176, PageID.8857, 8860).  All the while, SFMAIC was forced to continue to defend against the claims in the Qui Tam Action, including through filing, briefing, and arguing a motion to dismiss and opposing a request for leave to further amend that complaint.

In light of Angelo's continued noncompliance, SFMAIC filed another motion to enforce (ECF No. 163), seeking to compel Angelo to comply with this Court's orders to seek the Government's consent to dismiss SFMAIC and affiliates from the Qui Tam Action.  The Court granted that motion, explaining that Angelo's prior efforts "led to inconsistent results and confusion" (ECF No. 176, PageID.8860) and "left the court with concerns that Angelo was not proceeding in good faith as required" (ECF No. 181, PageID.8969).  Angelo nevertheless continued to delay and expand the litigation, seeking reconsideration and a stay from this Court (ECF Nos.

---

[2] *See generally* dockets in *State Farm Mutual Automobile Insurance Company v. Michael Angelo, et al.*, CA6 Consolidated Case Nos. 22-1409 and 23-1340.

178 and 177), and then an emergency stay from the Sixth Circuit—a request the Court of Appeals promptly rejected. (*See* Dkt. 10, Case: 23-1340, Order (6th Cir. Apr. 14, 2023) (ECF No. 194-3, PageID.9042-47).

Only then did Angelo file a request for the Government's consent to dismiss the *qui tam* claims against SFMAIC, but did so under "protest" and sought dismissal of SFMAIC and its affiliates[3] in a way that has necessitated additional SFMAIC effort in the Qui Tam Action. (*See, e.g.,* Case No. 2:19-cv-12165, ECF No. 456, 469, 471, 484). But, as this Court underscored, whether Angelo's latest tactics in the Qui Tam Action are successful in preventing SFMAIC and its affiliates from being fully dismissed from that action has no bearing on whether SFMAIC succeeded in enforcing the "rights owed to it under the parties' settlement agreement" and is entitled to recovery of the fees and costs it has expended to date. ECF No. 197, PageID.9118.

For well over two years, Angelo evaded his Settlement Agreement duties, forcing SFMAIC to pursue judicial remedies to compel Angelo's compliance and to defend itself in the Qui Tam Action. As a result, on September 14, 2023, this Court entered its Opinion and Order granting SFMAIC's Motion for Award of Attorney

---

[3] Despite Angelo telling the Court and SFMAIC for more than a year that the Government would not consent to dismissing the claims against SFMAIC and its affiliates, the United States and various States did, in fact formally file a Notice of Consent to Partial Dismissal. (2:19-cv-12165 ECF No. 468, PageID.8142, ECF No. 474, PageID.8195).

Fees and Costs.  (ECF No. 197.)  The Court concluded that "[p]lainly, the settlement agreement allows for recovery of attorney fees and costs under the present circumstances."  (*Id*., PageID.9112, 9117.)  The Court further confirmed SFMAIC's status as the "prevailing party" for purposes of recovering attorney fees and costs under the Settlement Agreement:

> State Farm has steadily pursued in this litigation the enforcement of rights owed to it under the parties' settlement agreement.  Angelo may disagree, but the court found the *qui tam* action to be one of the claims he should have discontinued within seven days of the settlement agreement's enactment.   Given the nature of the *qui tam* suit, discontinuing that action took the ultimate form of a request for consent to dismiss.  Simply put, State Farm got what it came for. . . [a]s such, State Farm is a prevailing party for purposes of this case.

(ECF No. 197, PageID.9118-19.)

The Court thus found Angelo's conduct warrants an award of fees and costs to SFMAIC at this time.  The Court directed SFMAIC to submit a bill of costs and fees for the Court's review covering SFMAIC's reasonable fees and costs expended in enforcing the Settlement Agreement in this matter and the Sixth Circuit proceedings and in defending the Qui Tam Action to date. (ECF No. 197, PageID.9113-9114 n.4; 9122.)

**II.    SFMAIC's Requested Fees and Costs are Reasonable.**

    A.    *Lodestar Analysis*

The attorney's fees identified in this Bill of Costs and attached exhibits are reasonable. To determine whether fees are reasonable, courts use the "lodestar" approach, which determines an amount of fees based on the reasonable number of hours billed multiplied by a reasonable billing rate. *Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 434 (6th Cir. 2002).

The fees requested in SFMAIC's Motion for Attorney Fees ("Motion") were incurred by:

- SFMAIC's lead counsel in this case, attorneys at the law firm Miller, Canfield, Paddock and Stone, P.L.C. ("Miller Canfield"), including Thomas W. Cranmer, Matthew P. Allen, Caroline B. Giordano, and Erika L. Giroux;

- SFMAIC's lead counsel in the Qui Tam Action, attorneys at the law firm Morgan, Lewis & Bockius LLP ("Morgan Lewis"), including Douglas W. Baruch, Jennifer M. Wollenberg, and Kayla Stachniak Kaplan; and

- SFMAIC's local counsel in the Qui Tam Action, attorneys at the law firm Riley Safer Holmes & Cancila LLP ("RSHC"), including Joseph A. Cancila, Nick Kahlon, Brian J. Neff, Gregory L. Curtner, Matthew Kennison, Dennis Santoni, and Toi Hooker (paralegal).

Over the past two-plus years SFMAIC has been enforcing Angelo's compliance with the Settlement Agreement and defending against the claims in the Qui Tam Action, attorneys representing SFMAIC have billed the "lodestar" amounts reflected in the charts below:

| Miller Canfield | | | |
|---|---|---|---|
| **Miller Canfield Attorney** | **Hours** | **Rate** | **Lodestar** |
| Thomas W. Cranmer | 120.90 | $550/hour | $66,495.00 |
| Matthew P. Allen | 309.00 | $415/hour | $128,235.00 |
| Caroline B. Giordano | 171.60 | $320/hour | $54,912.00 |
| Erika L. Giroux | 103.00 | $325/hour | $33,475.00 |
| **TOTAL** | **704.50** | | **$283,117.00** |

(**Exhibit 1**, Allen Decl., ¶10.)  An itemized list of the billing entries from Miller Canfield detailing legal fees sought in this Bill of Costs is attached as **Exhibit 1-A**. (*Id*.)  The entries list the attorney who recorded the time along with a description of the tasks that were performed. (*Id*.)

| Morgan Lewis | | | |
|---|---|---|---|
| **Morgan Lewis Attorney** | **Hours** | **Rate** | **Lodestar** |
| Douglas W. Baruch | 347.2 | $875 | $303,800.00 |
| Jennifer M. Wollenberg | 313.5 | $800 | $250,800.00 |
| Kayla Stachniak Kaplan | 574.6 | $657 | $377,512.20 |
| TOTAL | 935.3 | | $932,112.20 |

(**Exhibit 2**, Wollenberg Decl., ¶¶10-11.)  Because of an alternative fee arrangement in place during a portion of period at issue, rather than the "Total" listed above, SFMAIC is instead seeking **$918,559.83** related to Morgan Lewis' fees. (**Exhibit 2, Wollenberg Decl., ¶9-10.**)  An itemized list of the billing entries from Morgan Lewis detailing legal fees sought in this Bill of Costs is attached as **Exhibit 2-A**.  (*Id*.)  The

entries list the attorney who recorded the time along with a description of the tasks that were performed. (*Id.*)

| RSHC | | | |
|---|---|---|---|
| **RSHC Attorney** | **Hours** | **Rate (Avg)** | **Lodestar** |
| Joseph A. Cancila | 9.2 | $527 | $4,848 |
| Nick Kahlon | 55.7 | $546 | $30,432.70 |
| Brian J. Neff | 31.5 | $546 | $17,223.60 |
| Gregory L. Curtner | 14.8 | $574 | $8,487.80 |
| Matthew Kennison | 11.5 | $545 | $6,265.10 |
| Dennis Santoni | 2.1 | $527 | $1,106.70 |
| Toi Hooker (paralegal) | 9.6 | $225 | $2,160 |
| TOTAL | 134.4 | | **$70,523.90** |

(**Exhibit 3**, Kennison Decl., ¶13.)  RSHC attorneys were billed out in this matter at a flat hourly rate, which adjusted in mid-2022.  (*Id.*) An itemized list of the billing entries from RSHC detailing legal fees sought in this Bill of Costs is attached as **Exhibit 3-A**.  (*Id.*)  The entries list the attorney or paralegal who recorded the time along with a description of the tasks that were performed. (*Id.*)  The hourly rates charged by RSHC attorneys on this matter are similar to rates charged by attorneys with similar levels of experience at comparable firms in Michigan.  (*See* **Exhibit 4**, Tables 3 and 7.)

These entries include time billed in both enforcement proceedings in this action and in defending the Qui Tam Action that Angelo was obligated to

discontinue.  In that Qui Tam Action, Angelo sought to impose liability, treble damages, and per-claim civil penalties under the False Claims Act and various state false claims laws for what Angelo alleged to be "tens of thousands of instances" of reverse false claims.  Again, Angelo has asserted the Qui Tam Action represented potential "recovery of billions of dollars from State Farm and its affiliates."  ECF No. 160, PageID.8315.

B.    *Experience and Qualifications of SFMAIC's Counsel*

SFMAIC's counsel here and in the Qui Tam Action have extensive experience litigating complex civil lawsuits:

Mr. Cranmer is a senior principal and trial lawyer at Miller Canfield with over forty years of litigation experience.  Mr. Cranmer is based in Miller Canfield's Troy and Detroit offices.  He concentrates his practice in complex commercial litigation and white-collar criminal defense.  Mr. Cranmer is the recipient of numerous awards for legal excellence and is consistently recognized by industry publications as one of Michigan's leading lawyers.  (Allen Decl. ¶6.)

Mr. Allen is a senior principal and trial lawyer at Miller Canfield specializing in complex commercial, securities, and white-collar litigation.  Mr. Allen joined Miller Canfield's litigation and dispute resolution group in 2002 and is based in Miller Canfield's Troy and Detroit offices.  He has over twenty years of litigation experience representing clients in state and federal courts throughout Michigan, the

United States and abroad.  Over the past decade Mr. Allen has been consistently voted by his peers as a leading lawyer in Michigan and the United States.  (Allen Decl. ¶3.)

Ms. Giordano, a principal in Miller Canfield's Ann Arbor office specializing in commercial litigation and dispute resolution, has been practicing law for approximately eleven years.  During this time, she has been a continuous member of the State Bar of Michigan and has represented clients in the Michigan trial courts, Court of Appeals, and Supreme Court, as well as the federal trial and appellate courts.  (Allen Decl. ¶7.)

Ms. Giroux, a senior associate at Miller Canfield's Detroit office specializing in litigation and dispute resolution, graduated from the University of Michigan Law School in 2017, and was admitted to the State Bar of Michigan later that year.  Ms. Giroux has represented clients in the Michigan trial courts, Court of Appeals, and Supreme Court, as well as the federal trial and appellate courts.  (Allen Decl. ¶8.)

Mr. Baruch is a partner in Morgan Lewis with extensive experience representing corporations and individuals in FCA and other complex civil and criminal fraud enforcement actions.  Mr. Baruch is the co-author of *Civil False Claims and Qui Tam Actions* (Wolters Kluwer, 5th Ed. 2020), a comprehensive, two-volume treatise frequently cited by federal and state courts as an authority on the FCA.  Mr. Baruch is resident in Morgan Lewis' Washington, D.C. office and is a

member in good standing of the Washington, D.C., New York, and Maryland bars. (Wollenberg Decl. ¶7.)

Ms. Wollenberg is a partner in Morgan Lewis and a member of the firm's False Claims Act practice, with over nineteen years of experience representing clients in complex civil litigation with a focus on the defense of civil fraud enforcement matters, particularly FCA actions. She is resident in Morgan Lewis' Washington, D.C. office and a member in good standing of the Washington, D.C. and New York bars. (Wollenberg Decl. ¶4.)

Ms. Kaplan is a current Morgan Lewis partner. During the period of time covered by this Bill of Costs, Ms. Kaplan was a Morgan Lewis senior associate. She is a member of the False Claims Act practice at Morgan Lewis, and has over thirteen years of experience representing clients in FCA actions across a variety of industries. Ms. Kaplan is resident in Morgan Lewis' Washington, D.C. office and is a member in good standing of the Washington, D.C. and Maryland bars. (Wollenberg Decl. ¶8.)

Mr. Cancila is a founding member and named equity partner at RSHC with over 37 years of litigation experience. Mr. Cancila is based in RSHC's Chicago office. He concentrates his practice in complex commercial litigation and class actions. Mr. Cancila is the recipient of numerous awards for legal excellence, including most recently *Best Lawyers* Chicago Mass Tort Litigation/Class Actions-

Defendants "Lawyer of the Year" for 2024, and is consistently recognized by industry publications as one of the country's leading lawyers. Mr. Cancila received his law degree from the University of Chicago in 1986. (Kennison Decl. ¶6.)

Mr. Kahlon is a founding member, equity partner, and Co-Lead of RSHC's General Litigation Practice Team. Based in RSHC's Chicago office, Mr. Kahlon has over 23 years of litigation experience, concentrating his practice in complex commercial litigation. Mr. Kahlon is the recipient of numerous awards for legal excellence, and has been recognized by industry publications as one of Illinois' leading lawyers. Mr. Kahlon received his law degree from the University of Texas in 2000. (Kennison Decl. ¶7.)

Mr. Neff is Counsel at RSHC with over 30 years of litigation experience. Mr. Neff is based in RSHC's New York office. He concentrates his practice in complex, high-stakes commercial litigation and class actions. Mr. Neff received his law degree from the University of Utah College of Law in 1993. Mr. Neff has represented clients in courts across the country, including in the United States Supreme Court. (Kennison Decl. ¶8.)

Mr. Santoni is Counsel at RSHC with over 24 years of litigation experience. Mr. Santoni has vast experience in e-discovery platforms and technology, and was named a global finalist for the Relativity Attorney Tech Evangelist Innovation

Award. Mr. Santoni received his law degree from Loyola University in Chicago in 1999. (Kennison Decl. ¶9.)

Mr. Curtner is a partner at RSHC with over 50 years of litigation experience. Mr. Curtner is based in RSHC's Ann Arbor office.  He concentrates his practice in complex commercial and antitrust litigation. Mr. Curtner is the recipient of numerous awards for legal excellence, and is consistently recognized by industry publications as one of the country's leading lawyers.  Mr. Curtner received his law degree from the University of Michigan in 1970. (Kennison Decl. ¶10.)

Ms. Hooker is a senior paralegal at RSHC with over a decade of experience, including in complex commercial litigation, class actions, and white collar criminal investigations. (Kennison Decl. ¶11.)

C.    *SFMAIC's Time Spent Enforcing Angelo's Compliance with the Settlement Agreement is Reasonable.*

SFMAIC submits the number of hours expended by its attorneys in enforcing Angelo's compliance with the Settlement Agreement and defending the Qui Tam Action is reasonable.  Securing Angelo's compliance with the Settlement Agreement and defending SFMAIC and its affiliates in the Qui Tam Action has required a years-long, coordinated effort by SFMAIC and its counsel.

Angelo is to blame for the duration and extent of SFMAIC's expenditures.  At every turn, he made both litigations more expensive and time-consuming for SFMAIC.  He ignored the clear language of the Settlement Agreement and this

15

Court's multiple Orders directing his compliance with that Agreement.  He filed serial motions, both here and in the Sixth Circuit, to delay complying with his duty to seek the Government's consent to dismiss the Qui Tam Action.[4]

Throughout this entire period, SFMAIC also was forced to defend against the claims brought by Angelo against SFMAIC and its affiliates in the Qui Tam Action. That included not only briefing and arguing a still-pending motion to dismiss, but also opposing a still-pending motion for leave to further amend the complaint.  In addition, in the Qui Tam Action, SFMAIC has had to respond to numerous filings by Angelo and his "co-relator" (added by Angelo after he failed to comply with his Settlement Agreement obligations) attempting to avoid the clear language of the Settlement Agreement and undermine the request for consent that this Court ordered Angelo to file in the Qui Tam Action and also the resulting government consents. (Wollenberg Decl. ¶26.)  ***The docket for the Qui Tam Action includes 475 entries post-dating February 19, 2021***.  (*See* **Exhibit 6**, Qui Tam Action Docket.)  These include SFMAIC and its affiliates':

- Addressing the Amended Complaint filed by Angelo, **Exhibit 6,** ECF No. 20;

---

[4] For example, as of the date of this declaration, the docket for this action includes over sixty separate entries post-dating February 19, 2021 and relating to enforcement of the Settlement Agreement.  (*See* **Exhibit 5**, Docket.)  And Angelo filed multiple, pending appeals (now consolidated), including a motion for emergency stay that the Sixth Circuit denied.  *See* Dkt. 10, p.3, Case: 23-40, Order (6th Cir. Apr. 14, 2023).

- Joinder in a joint Motion to Dismiss by all Defendants, *id.* at ECF Nos. 338, 390;

- Joinder in a joint Motion for Judicial Notice in support of the Motion to Dismiss, *id.* at ECF Nos. 339, 389;

- Supplemental briefing in support of the Motion to Dismiss, addressing issues specific to SFMAIC and its affiliates, *id.* at ECF Nos. 341, 392;

- Joinder in Response briefing in opposition to Relators' Motion for Leave to belatedly file supplemental materials in opposition to the Motion to Dismiss, *id.* at ECF No. 393;

- Opposition to Relators' Motion for Leave to file a sur-reply[5] to SFMAIC and its affiliates' supplemental reply briefing in support of the Motion to Dismiss, *id.* at ECF No. 403;

- Joinder in Response briefing in opposition to Relators' Motion to Strike aspects of the joint reply briefing in support of the Motion to Dismiss, *id.* at ECF No. 401;

- Participation in oral argument on the Motion to Dismiss, *id.* at ECF No. 423;

- Numerous notices of or responses to notices of supplemental authority filed by Relators, *see, e.g.*, *id.* at ECF No. 478;

- Joinder in Response briefing in opposition to Relators' Motion for Leave to file a second amended complaint, *id.* at ECF No. 433;

- Supplemental briefing in opposition to Relators' Motion for Leave to file a second amended complaint, addressing issues specific to SFMAIC and its affiliates, *id.* at ECF No. 432;

---

[5] At times, papers in the Qui Tam Action nominally were filed by Angelo's co-relator only but continued to include arguments as to Angelo or to seek leave to assert claims on Angelo's behalf. References to these filings are thus described as on behalf of "Relators."

- Response briefing to Angelo's and his co-relator's "objections" to Angelo's court-ordered filing of the request for consent to dismiss SFMAIC and its affiliates from the Qui Tam Action, *id.* at ECF No. 460;

- Opposition to Relators' Motion to Strike the aforementioned response briefing, *id.* at ECF No. 472;

- Motions for Entry of orders dismissing claims pursuant to the government consents to Angelo's court-ordered filing of the request for consent, *id.* at ECF Nos. 473, 475, 481; and

- Opposition to Relators' Motion for Sanctions against "State Farm" related to the aforementioned Motions for Entry, *id.* at ECF No. 485.

Enforcing Angelo's compliance with the Settlement Agreement has required substantial effort from SFMAIC and its counsel for well over two years. The Declarations from SFMAIC's counsel and billing summary exhibits (**Exs. 1-3**) detail this work.  They show SFMAIC's counsel collectively spent over 1700 hours researching and drafting literally dozens of detailed, motions, responses, and accompanying briefs to enforce the Settlement Agreement and defend the Qui Tam Action, including at least twelve substantive filings in this action and nineteen substantive filings in the Qui Tam Action.  In each filing, and at court hearings, SFMAIC made considerable efforts to clearly present the complex factual and legal background at issue and provide ample support for its position to the Court. Preparing each brief also required continuous, strategic coordination among SFMAIC's in-house legal team, counsel in this case, and counsel in the Qui Tam Action.

D.      *SFMAIC's Billing Rates are Reasonable.*

SFMAIC's payment of its counsel's billing rates for counsel's work enforcing Angelo's compliance with the Settlement Agreement and defending the Qui Tam Action is further evidence the requested rates are reasonable.  "The best evidence of the market value of legal services is what people will pay for it." *Stark v. PPM America*, 354 F.3d 666, 675 (7th Cir. 2004) (citing *Balcor Real Estate Holdings v. Walentas Phoenix Corp.*, 73 F.3d 150 (7th Cir. 1996)).  An attorney's actual billing rate is a fair and efficient shortcut for determining the market rate. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995).  In *Balcor*, Judge Easterbrook stated that:

> Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Indeed, this is not "evidence" about market value; it is market value. Although courts interpolate the word "reasonable" into clauses of this kind, the best guarantee of reasonableness is willingness to pay.

*Balcor*, 73 F.3d at 153; *Medcom Holding Co. v. Baxter Travenol Labs., Inc*., 200 F.3d 518, 520 (7th Cir. 1999) ("if bills were paid, this strongly implied that they meet market standards").  SFMAIC has been consistently paying legal fees at the rates charged.   (**Ex. 1**, Allen Decl. ¶11; **Ex. 2**, Wollenberg Decl. ¶23; **Ex. 3**, Kennison Decl. ¶16).  This demonstrates that SFMAIC's requested attorney fees are *per se* reasonable.

Additionally, "[t]o determine a reasonable hourly rate, courts should look to the 'prevailing market rates in the relevant community.'" *Van Loo v. Cajun Op. Co.*,

2016 WL 6211692, at *3 (E.D. Mich. Oct. 25, 2016) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (2000)).  The hourly rates charged by Miller Canfield and RSHC attorneys on this matter are similar to or less than rates charged by attorneys with similar levels of experience at comparable firms in Michigan. *See* State Bar of Michigan, *2023 State Bar of Michigan Economics of Law Practice: Attorney Income and Billing Rate Summary Report*, p. 5, Table 3 (attached as **Exhibit 4**).  Moreover, for Michigan attorneys specializing in business/commercial litigation, the average hourly billing rate is $392 and the 75th percentile is $450.  *Id.* at p.8, Table 7.[6] Finally, this Court repeatedly has found that Miller Canfield's hourly rates were "fair and reasonable" when entering previous attorney fee awards in this case.[7]

The Morgan Lewis attorneys SFMAIC retained to represent it in the Qui Tam Action – based in Washington, D.C. – have a national FCA defense practice, and regularly appear in federal and state courts across the nation in FCA litigation matters.  Wollenberg Decl. ¶¶20-22.  The Sixth Circuit has held "that in determining

[6] Courts have awarded attorney's fees at similar or higher rates than those requested by Miller Canfield here.  *See, e.g., Morris v. Schnoor*, No. 321925, 2016 WL 4262387, at *8 (Mich. Ct. App. Aug. 11, 2016) (finding that billing rate of $385/hr for principal counsel was reasonable); *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 812 (6th Cir. 2013) (approving a billing rate of $400/hr for lead counsel).

[7] *See, e.g.,* ECF No. 80, PageID.4620 (ordering Defendants James, Hakki, and Orthopedic, P.C. to pay requested fees to SFMAIC under Fed. R. Civ. P. 37(a)(5)(A)); ECF No. 112, PageID.6169 (ordering third parties Norman Dehko, *et al*. to pay requested fees to SFMAIC under Fed. R. Civ. P. 37(a)(5)(A)).

the appropriate fees for an 'out-of-town specialist,' a district court 'must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation.'" *United States ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 147–48 (6th Cir. 2010) (quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir.1995)).

As to the first *Hadix* factor, the nature of the Qui Tam Action, which includes allegations that are nationwide in scope and requires specialized experience in the defense of FCA actions, supports SFMAIC's retention of counsel outside of the geographic area of the Eastern District of Michigan.  Many attorneys specializing in FCA defense are concentrated in the Washington, D.C. and New York City legal markets, and other defendants in the Qui Tam Action also are represented by national firms based outside of this district, such as King & Spalding, Simpson Thacher & Bartlett, LLP, Winston & Strawn LLP, and Jones Day.  *See* Wollenberg Decl. ¶21; **Ex. 6** (Qui Tam Docket).  *See generally Lefan*, 397 F. App'x at 148 (finding district court did not abuse discretion in determining necessity of hiring "non-local *qui tam* specialists" in FCA case filed within the Sixth Circuit); *United States ex rel. Hobbs v. MedQuest Assocs., Inc.*, No. 3:06-1169, 2012 WL 3561792, at *3 (M.D. Tenn. Aug. 16, 2012) ("Given that Defendants operate a multistate business and [fee-

seeking] counsel's FCA litigation experience, the Court deems national hourly rates appropriate.").

Beyond SFMAIC's defense in the Qui Tam Action, enforcement of the Settlement Agreement in the context of Angelo's refusal to seek the Government's consent to dismiss the Qui Tam Action has posed substantively and procedurally complex FCA issues, requiring SFMAIC's counsel to perform detailed statutory analysis of the False Claims Act and governing jurisprudence and for Morgan Lewis attorneys representing SFMAIC in the Qui Tam Action to coordinate closely with and be involved in the drafting of and attendance at hearings in this action to rebut Angelo's constantly shifting justifications for noncompliance that were (purportedly) rooted in arguments about the FCA statute.

As to the second *Hadix* factor, the hourly rates charged by Morgan Lewis attorneys on this matter are consistent with, and in fact conservative as compared to, Washington, D.C.-area market rates, as well as those of similar law firms nationwide, and thus an appropriate measure of reasonable attorney's fees in this case.[8] *See, e.g.*, *Int'l Union, United Auto., Aerospace & Agric., Implement Workers of Am. (UAW) v. TRW Auto. U.S., LLC*, No. 11-CV-14630, 2019 WL 4744329, at *4 (E.D. Mich. Sept. 30, 2019) (finding reasonable rates that took into account attorney

---

[8] The Morgan Lewis rates in these matters are discounted from standard rates as an accommodation to a long-standing and valued Firm client. Wollenberg Decl. at ¶13.

"status as a national [specialized] practitioner," including based on the LSI Laffey Matrix), *rev'd on other grounds*, 850 F. App'x 929 (6th Cir. 2021).

The LSI Laffey Matrix (attached as **Exhibit 7** and available at http://www.laffeymatrix.com/see.html) sets out attorney hourly rates for the Washington, D.C. area based on the number of years out of law school and is adjusted annually based on the rate of inflation for legal services as reflected in the Consumer Price Index for U.S. City Average, Legal Service Fees. The D.C. Circuit has discussed the history and provenance of the LSI Laffey Matrix in several opinions, most recently *DL v. District of Columbia*, 924 F.3d 585 (2019). As the D.C. Circuit noted, the LSI Laffey Matrix addresses hourly rates for "complex federal litigation" in Washington, D.C. and is regularly updated by economist Dr. Michael Kavanaugh using the Bureau of Labor Statistics' Legal Services Index (LSI), a statistic that estimates price increases in the legal market (as opposed to inflation more generally). *Id.* at 589-90.[9]

---

[9] *See also Salazar v. Dist. Of Columbia*, 809 F.3d 58, 64-65 (D.C. Cir. 2015)(affirming use of LSI Laffey Matrix); *Eley v. Dist. Of Columbia*, 793 F.3d 97, 101-02 (D.C. Cir. 2015) (observing parties "advocated, to some degree of success" for the LSI Laffey Matrix). And federal district court judges in Washington, D.C. frequently accept the LSI Laffey Matrix for fee award purposes. *See, e.g.*, *B.J. v. Dist. Of Columbia*, No. 19-cv-2163-TSC-ZMF, 2020 WL 8512639, at *3-4 (D.D.C. Nov. 9, 2020); *True the Vote, Inc. v. Internal Revenue Serv.*, No. CV 13-734 (RBW), 2020 WL 5656694, at *8-9 (D.D.C. Sept. 23, 2020); *U.F. v. Dist. Of Columbia*, No. 19-2164 (BAH), 2020 WL 4673418, at *6-7 (D.D.C. Aug. 12, 2020); *Feld v. Fireman's Fund Ins. Co.*, No. 12-1789, (JDB) 2020 WL 1140673, at *8 (D.D.C.

As the D.C. Circuit observed in *Salazar*, the LSI Laffey Matrix likely is a conservative estimate of the cost of legal services in the D.C. market. 809 F.3d at 65. Indeed, market surveys show the LSI Laffey Matrix rates lag behind actual rates charged by Washington, D.C. attorneys. In particular, the *Real Rate Report*, (attached as **Exhibit 8**), shows actual data for attorneys practicing in Washington, D.C. and has been relied upon to set market-based fee award rates by federal district courts. *See, e.g.*, *Muehe v. City of Bos.*, 569 F. Supp. 3d 80, 86-87 (D. Mass. 2021); *Kries v. City of San Diego*, No. 17-CV-1464-GPC-BGS, 2021 WL 120830, at *7 (S.D. Cal. Jan. 13, 2021). And courts likewise have used information obtained from Thompson Reuters' Peer Monitor service (excerpted in **Ex. 2**, Wollenberg Decl. ¶19), which shows mean, median, first quartile, and third quartile hourly rates of litigation partners and associates resident in the Washington, D.C. officers of AmLaw 100 firms.[10] Both the *Real Rate Report* and Peer Monitor data, in addition to the LSI Laffey Matrix, support as reasonable the hourly rates charged by Morgan Lewis attorneys on this matter.

---

Mar. 9, 2020), *order corrected on reconsideration*, No. CV 12-1789 (JDB), 2020 WL 13610563 (D.D.C. May 15, 2020).

[10] *See, e.g.*, *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17CV1943-LAB-LL, 2019 WL 3769191, at *12 (S.D. Cal. Aug. 9, 2019); *United Food & Com. Workers v. Super Fresh Food Markets Inc.*, No. CIV. 04-1226 (RMB), 2009 WL 2517064, at *3 (D.N.J. Aug. 14, 2009).

E.      *SFMAIC Incurred Related Costs.*

The Court also found SFMAIC is entitled to recovery of its costs expended in enforcing the Settlement Agreement in this matter and the Sixth Circuit proceedings and in defending the Qui Tam Action.  (ECF No. 197, PageID.9113-9114 n.4; 9122.) Attorneys representing SFMAIC have billed costs related to these efforts in the form of travel costs for attendance at hearings – in the amount of $2,855.27.  These itemized costs are detailed in the same declaration supporting reasonable attorney's fees.  *See* (**Exhibit 2-B**, Wollenberg Decl., ¶28).

WHEREFORE, for the foregoing reasons and those set forth in the attached Declarations, SFMAIC requests that this Court order Angelo, including any Michael Angelo Entity, together with Angelo's heirs, successors, and assigns,[11] to pay SFMAIC's reasonable attorney fees and costs in the amount of $1,272,200.73 in fees and $2,855.27 in costs incurred in connection with:

> the drafting, filing, and or arguing of ECF No. 118; ECF No. 130; ECF No. 143; ECF No. 145; ECF No. 148; No. 153; ECF No. 154; ECF No. 163; ECF No. 166; ECF No. 168; ECF No. 172; the March 20, 2023

---

[11] The Settlement Agreement applies to all "Michael Angelo Entities," which expressly includes, but is not limited to, Angelo himself, as well as "any entity or sole proprietorship, in whatever legal form, in which Angelo is conducting, will conduct, or has conducted business, or is considering conducting business, in Michigan, either alone or with others, including any and all agents and representatives[.]"  (ECF No. 118-2, PageID.6702).  The Settlement Agreement further provides that it "***shall be binding upon*** and inure to the benefit of the Parties hereto and their respective heirs, successors, and ***assigns***")(emphasis added). ECF No. 175-4, PageID.8768-69.

hearing on ECF Nos. 163 and 172; ECF No. 175; ECF No. 180; all of its costs and fees incurred to date in enforcing the settlement agreement in Angelo's two pending appeals before the United States Court of Appeals for the Sixth Circuit, namely *State Farm Mutual Automobile Insurance Company v. Michael Angelo, et al,* CA6 Case Nos. 22-1409 and 23-1340; and all of its costs and fees incurred to date in seeking the dismissal of *United States ex rel. Michael Angelo et al v. State Farm Mutual Automobile Insurance Company,* No. 2:19-cv-12165 (E.D. Mich.) (the "Qui Tam Action").

(Order, ECF No. 197, PageID.9113-9114; 9122.)

<div style="margin-left:2em">

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By:    <u>/s/  *Matthew P. Allen*</u>
        Thomas W. Cranmer (P25252)
        Matthew P. Allen (P57914)
        Caroline B. Giordano (P76658)
        Miller, Canfield, Paddock & Stone, P.L.C.
        840 W. Long Lake Road, Suite 150
        Troy, MI  48098
        Telephone:  248.267.3381

</div>

Dated: January 26, 2024        *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2024, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filers of record.

By:   /s/ *Matthew P. Allen*

41621354.2/150450.00154