UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,

v.

MICHAEL ANGELO, et al.,

    Defendants.
_____/

Case No: 19-10669

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF ATTORNEY FEES AND COSTS**

On September 14, 2023, the Honorable Robert H. Cleland granted Plaintiff State Farm Mutual Automobile Insurance Company's ("State Farm") motion for award of attorney fees and costs, awarding State Farm its costs and fees incurred in connection with enforcing the parties' Confidential Settlement Agreement and Release ("Settlement Agreement"). (ECF No. 197.) This case was then transferred to the undersigned, and this Court issued an order denying Plaintiff's motion to seal information relating to attorney rates and denying Defendant Michael Angelo's motion to stay proceedings pending resolution of his appeal of the order granting Plaintiff's motion for attorney fees and costs.[1] (ECF No. 206.) Consistent with this Court's order, Plaintiff submitted an amended bill of costs, which is the subject of this order. (ECF No. 207.) Plaintiff's bill of costs includes work from two law firms within the local Michigan market, Miller, Canfield, Paddock and Stone, P.L.C. ("Miller Canfield") and Riley Safer Holmes & Cancila LLP

---

[1] Defendant's appeal of the order granting attorney fees and costs was denied and dismissed for lack of jurisdiction. (ECF No. 209.)

1

("RSHC"), and one based in Washington, D.C., Morgan, Lewis & Bockius LLP ("Morgan Lewis"). *Id.* Defendant filed an objection to the bill of costs. (ECF No. 208.) The Court will decide the matter without a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons set forth below, Plaintiff's attorney fees and costs are GRANTED IN PART and DENIED IN PART.

I. **Legal Standard**

To calculate a reasonable award for attorney fees, courts use the lodestar method, "which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008). "To justify an award of attorneys' fees, the party seeking compensation bears the burden of documenting its work." *Gonter v. Hunter Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007). "The key requirement for an award of attorney fees is that '[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'" *Imwalle*, 515 F.3d at 553 (alteration in original) (quoting *United Slate Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)). Furthermore, the party seeking a fee award should identify the general subject matter for each time entry. *Id.* (citing *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1020 (N.D. Ohio 1997)). Finally, to determine a reasonable attorney's fee award, courts normally "look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004). However, where, as here,

2

"fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995).

## II.  Analysis

### A.  Out-of-town Counsel

As Judge Cleland put it, this has been an "extensive litigation" where the "post-settlement life . . . rivals the scope of its pre-settlement's." (ECF No. 197, PageID.9112.) Post-settlement actions taken by Defendant in violation of the Settlement Agreement include filing an amended complaint in the *qui tam* action, which alleged widespread fraud by Plaintiff under the False Claims Act. (ECF No. 149, PageID.8070.) There was then additional time spent on enforcing Defendant's obligation under the Settlement Agreement to solicit the Government's consent to dismiss Plaintiff from the *qui tam* action and determining whether Defendant adequately did so before Defendant followed through under protest. (ECF No. 197, PageID.9113.) Due to the nationwide scope of the allegations and potential liability involved in Defendant's pursuit of the *qui tam* action and the close monitoring and numerous steps needed to be taken to ensure Defendant discharged his Settlement Agreement obligations, the Court finds Plaintiff has shown it was reasonable to hire out-of-town specialists.[2]

The Court also finds the rates requested by the Morgan Lewis attorneys to be reasonable. Due to the alternative fee arrangement in place between Morgan Lewis and

---

[2] The Court also notes that the out-of-town counsel from Morgan Lewis have extensive litigation experience and national reputation regarding False Claim Act claims. (ECF No. 207-3, PageID.10164-66.)

3

Plaintiff, the effective average hourly rate of its attorneys was $743.59.[3] This is less than the ninety-fifth percentile hourly rate charged by attorneys located in Downtown Detroit ($760). (ECF No. 198-5, PageID.9299.) Considering the experience and reputation of the Morgan Lewis attorneys in this area of litigation, an hourly rate somewhere in the top tenth percentile of a relevant local market is reasonable.

**B.     Lodestar**

The Court has reviewed the billing entries for each law firm and finds, with one exception, the hours requested reasonable. Defendant argues each firm's billing entries includes several hours with insufficient detail for Plaintiff to show the hours charged were reasonably related to the litigation. (ECF No. 208, PageID.10572.) Defendant focuses on entries with information redacted for privilege to descriptions as limited as "discuss," "revise," or "attend." *Id.* at 10573. However, the supporting documentation for attorney fee requests are "taken as a whole" when considering its adequacy, and "explicitly detailed descriptions are not required." *Imwalle*, 515 F.3d at 554. In their bill of costs and attached declarations, Plaintiff has provided sufficient documentation to inform the Court of the subject matter of the activities involved in the billing entries and that the hours billed were actually and reasonably spent enforcing the Settlement Agreement even if the billing entries on their own do not always do so. (*See* ECF Nos. 207; 207-2; 207-3; 207-4.) The bill of costs and supporting documentation here are similar to that found adequate in *Imwalle*. There, the Sixth Circuit upheld a fee award with a bill of costs containing entries as vague as "conference with," "research," and "review documents" because the billing records, as here, were itemized and specified the date, the time, and the individual who

---

[3] This number is reached by dividing the fee award requested ($918,559.83) by the total number of hours billed in connection with enforcing the parties' Settlement Agreement (1,235.3).

4

billed the time in fractional hours, and, when read along with the "billing statement as a whole and in conjunction with the timeline of the litigation," supported the conclusion that the "hours charged were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 554.

Defendant also argues that the number of hours requested is excessive. (ECF No. 208, PageID.10575-77.) The Court finds the hours requested and number of attorneys and staff used to enforce the Settlement Agreement reasonable. Plaintiff expended time and resources on over a dozen filings and hearings to enforce the Settlement Agreement. (ECF No. 197, PageID.9113 n.4.) Furthermore, Defendant's own filings while trying to pursue the *qui tam* action illustrate the complexity of the post-settlement litigation and potential liability facing Plaintiff. In his amended *qui tam* complaint, Plaintiff added several new parties and claims across several U.S. states amounting to "tens of thousands of instances" of wrongdoing by Plaintiff. (ECF No. 145-1, PageID.7781.) In his emergency motion to stay the Court's order granting Plaintiff's motion to enforce the Settlement Agreement, Defendant argued the *qui tam* action represented the potential "recovery of billions of dollars from [Plaintiff] and its affiliates." (ECF No. 160, PageID.8315.) In sum, Defendant created the post-settlement conditions necessitating the expense of significant time and resources by Plaintiff, and it was reasonable for Plaintiff's attorneys to expend the time and resources reflected in their bill of costs.

The one exception to the Court's finding is an entry by RSHC attorney Nick Kahlon on September 21, 2021 that has all of its description redacted so there are no words to inform the Court what activity is being billed for. (ECF No. 207-4, PageID.10221.)

5

Accordingly, Plaintiff's attorneys' fee award will be reduced by the amount requested for this entry, $263.50, to $1,271,937.23.

Defendant argues the hourly rates charged by Plaintiff's attorneys and one paralegal are unreasonable. (ECF No. 208, PageID.10579-81.) In support of his arguments regarding the attorneys' rates, Defendant cites an opinion which held "the median hourly billable rate for attorneys who practice in the insurance law field representing plaintiffs is $450.00. Because this is an insurance case, $450 per hour is a reasonable hourly rate to calculate the lodestar." *Hartford Accident & Indem. Co. v. Greater Lakes Ambulatory Surgery Ctr., LLC*, 2023 WL 9503391, at *3 (E.D. Mich. Dec. 6, 2023). However, that case was a dispute between two businesses involving claims that the defendant submitted fraudulent bills to the plaintiff on behalf on the plaintiff's insureds. *Id.* at *1. Here, Plaintiff faced a multiparty, complex litigation involving federal statutes and civil fraud issues on top of allegedly tens of thousands of instances of wrongdoing. Thus, the practice areas here appear different. Even if the Court were to find the substantive practice area of this case analogous to that of *Hartford*, the rates charged by Miller Canfield and RSHC attorneys here primarily fall between the median and the seventy-fifth percentile for insurance law attorneys representing plaintiffs in the State Bar of Michigan's 2023 Economics of Law Practice Survey ("2023 SBM Survey"). (ECF Nos. 207, PageID.10095; 207-5, PageID.10263.) Meanwhile, three attorneys' rates, including two below the twenty-fifth percentile, fall below the median for a total of 583.6 hours billed and one attorney's rate is above the seventy-fifth percentile for a total of 14.8 hours billed. (ECF No. 207, PageID.10095-96.) Moreover, the complexity of this case and experience, reputation, and ability of the attorneys make the hourly rates requested reasonable. *See*

*Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (instructing reasonable attorney fees are calculated using several factors, including "the experience, reputation, and ability of the attorneys"). Defendant argues using the 2023 SBM Survey to calculate a reasonable hourly rate is inappropriate because most of the work of this case was performed in 2021 and 2022. (ECF No. 208, PageID.10580.) However, the 2023 SBM Survey is based on "2022 income and 2022 billing rate information." (ECF No. 207-5, PageID.10258.)

Finally, Defendant argues that RSHC paralegal Toi Hooker's $225 hourly rate is excessive. (ECF No. 208, PageID.10581.) Defendant cites to *Argueta v. Argueta-Ugalde* for support, where the court used a $135 hourly rate for paralegals based on other courts in the district "approv[ing] billing rates for paralegals . . . from $125-$140 per hour." 2023 WL 4206071 at *2 (E.D. Mich. June 27, 2023). However, in *Argueta* the "[p]etitioner fail[ed] to provide the [c]ourt with any information regarding the qualifications of the paralegals." *Id.* Here, Plaintiff has supplied information that Ms. Hooker is a senior paralegal with over ten years of experience working on a variety of litigations. (ECF No. 207-4, PageID.10208.) The Court finds the requested hourly rates for the Miller Canfield and RSHC attorneys and paralegal reasonable.

### III. Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's request for attorney fees and costs. The Court awards Plaintiff $1,271,937.23 in attorney fees and costs and $2,855.27 in costs.

SO ORDERED.

s/ Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated: May 29, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 29, 2025, by electronic and/or ordinary mail.

        s/ Marlena Williams  
        Case Manager